# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: October 31, 2014

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | | UNPUBLISHED |
| ELENA KARBUSHEVA, | * | |
| | * | |
| Petitioner, | * | No. 13-040V |
| | * | |
| v. | * | |
| | * | Special Master Dorsey |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | Dismissal Decision; Multiple |
| | * | Vaccines; Failure to File an |
| Respondent. | * | Expert Report. |
| | * | |
| * * * * * * * * * * * * * * * | | |

Elena Karbusheva, Pro Se, Boise, Idaho
Julia McInerny, United States Dep't of Justice, Washington, DC, for respondent.

## DISMISSAL DECISION[1]

On January 11, 2013, Ms. Elena Karbusheva ("Ms. Karbusheva" or "petitioner") filed a petition, *pro se*, pursuant to the National Vaccine Injury Compensation Program,[2] alleging that she suffered from "Giana – Barre (sic) syndrome,[3] Landry's ascends paralyses[4] (sic), lupus, encephalopasy[5] (sic), high blood pressure, chronicle[6] (sic) hepatitis B and diabetes." Petition ("Pet.") at 1. Ms. Karbusheva states that these diseases occurred after she was vaccinated. Id.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 and note (2006)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2006) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

[3] "Guillain-Barré syndrome"

[4] "Land's Ascending Paralysis"

[5] "Encephalopathy"

[6] "Chronic"

Ms. Karbusheva's vaccination record shows that she received a number of vaccinations from March 16, 2009, through January 14, 2011.  See Petitioner's Exhibit 9 ("Pet. Ex.").  The information in the record does not show entitlement to an award under the Act.  For the reasons that follow, this case is dismissed for insufficient proof.

## I.   Factual Background

Ms. Karbusheva was born in Russia on January 6, 1963, but she lived in Uzbekistan just prior to moving to the United States.  Pet. Ex. 21 at 1.  An overview of Ms. Karbusheva's medical history is set forth in petitioner's exhibit 21.  She attended medical school in Uzbekistan and then worked as an obstetrician/gynecologist.  Id. at 1.  In 2009, Ms. Karbusheva came to the United States as a refugee.  Id.

Since arriving in the United States, Ms. Karbusheva has been seen by many physicians and health care providers.  She has filed numerous medical records in this case, some of which will be summarized below in order to provide an overview of the facts that have been reviewed and considered by the undersigned.

As stated above, Ms. Karbusheva's vaccination record shows that she received a number of vaccinations from March 16, 2009, through January 14, 2011.[7]  Pet. Ex. 9 at 1-2.  On June 28, 2012, Ms. Karbusheva underwent an MRI of her brain which showed "several hyperintense lesions" which were thought to be "early chronic microvascular changes."  Pet. Ex. 17 at 1.  An MRI of her cervical and lumbar spine performed on the same day showed cervical "foraminal stenosis"[8] and "multilevel lumbar spondylosis"[9] with a "mass affect on the left S1 nerve root."  Id. at 2.

Ms. Karbusheva underwent a physical examination by Dr. Kathleen Sutherland on November 30, 2010.  Dr. Sutherland documented that Ms. Karbusheva looked well, was ambulating and that she did not have inflammation of her joints.  Pet. Ex. 21.  Dr. Sutherland also noted that Ms. Karbusheva had no evidence of significant respiratory limitations but that she

---

[7] On March 16, 2009, Ms. Karbusheva received a hepatitis B vaccine.  On March 20, 2009, Ms. Karbusheva received the Td (Tetanus diphtheria) vaccine. On April 16, 2009, and September 16, 2009, she received her second and third hepatitis B vaccinations.  On February 1, 2010, Ms. Karbusheva received the 2009-2010 H1N1 vaccine.  On February 12, 2010, she received the varicella vaccine.  On June 30, 2010, Ms. Karbusheva received the Tdap and Measles, Mumps, Rubella (MMR) vaccines.  On August 4, 2010, Ms. Karbusheva received an MMR vaccine.  On January 14, 2011, Ms. Karbusheva received another Td vaccination.  On February 3, 2011, she received a Fluvirin vaccine.  Pet. Ex. 9 at 1-2.
[8] "Foraminal Stenosis" is the narrowing of the cervical disc space caused by enlargement of a joint (the uncinate process) in the spinal canal. http://www.spine-health.com/glossary/foraminal-stenosis.
[9] Lumbar spondylosis "describes bony overgrowths (osteophytes), predominantly those at the anterior, lateral, and, less commonly, posterior aspects of the superior and inferior margins of vertebral centra (bodies). This dynamic process increases with, and is perhaps an inevitable concomitant, of age." http://emedicine.medscape.com/article/249036-overview.

did complain of "diffuse myalgias and arthralgias." Id.  Dr. Sutherland also noted that Ms. Karbusheva had hypothyroidism.  Id.

On February 7, 2011, Ms. Karbusheva underwent a neurological consultation with Dr. Jackie J. Whitesell.  Ms. Karbusheva complained of numbness in her feet and chronic back pain. Pet. Ex. 34 at 1.  Dr. Whitesell noted that Ms. Karbuseheva reported back pain that she attributed to mercury and dioxin exposure in the 1990s.  Ms. Karbusheva also reported left sided weakness and vision loss which occurred in 1995, and which Ms. Karbusheva associated with her exposure to toxins.  Id.  Dr. Whitesell's impressions were as follows:

1.  Numbness and burning pain in her feet…if she has a peripheral neuropathy, it is quite mild.
2.  Chronic daily headaches…
3.  Abnormal MRI of the brain…However, I think the likelihood of her having MS at this point is low.
4.  Neck pain and low back pain…
5.  Hearing loss.
6.  Vitamin B12 deficiency.

Pet. Ex. 34 at 19-20.

An EMG study that was performed on April 8, 2011, on Ms. Karbusheva's left leg showed that Ms. Karbusheva had "evidence of mild subacute or chronic L5/S1 radiculopathy in the left leg without ongoing denervation."  Pet. Ex. 33 at 2.

Ms. Karbusheva underwent a neuropsychological consultation on June 2, 2011, with Clay H. Ward, PhD.  Pet. Ex. 41 at 3.  Dr. Ward reported the following history, as provided by Ms. Karbusheva:

The patient…presents with "systematic stress."  She …is having problems with her asthma and pain in her shoulder and back…in the past she has been poisoned with mercury…she also had "micro strokes"…She has been on disability in the past because of the mercury poisoning…this occurred in about 1986 or 1987…in 1995 she had a chloremic allergy reaction…she also had a small stroke in 2009.  She is reporting problems with concentration, fatigue and a high level of stress.

Pet. Ex. 41 at 3.

Dr. Ward's diagnosis was "major depressive disorder versus adjustment reaction with depressed mood, pain disorder associated with psychological and medical conditions and rule out cognitive disorder."  Pet. Ex. 41 at 4.  In a follow up visit on June 28, 2011, Dr. Ward's diagnosis also included probable "somatization disorder."  Pet. Ex. 41 at 1.

Ms. Karbusheva saw Dr. Whitesell in a follow-up visit on July 19, 2011, with a chief complaint of "low back pain."  Pet. Ex. 34 at 11.  Dr. Whitesell noted that Ms. Karbusheva had

an abnormal MRI which showed "chronic small vessel ischemic change[s]" in the brain.  Id. at 13.  Dr. Whitesell did not find any evidence of nerve problems but suspected that Ms. Karbusheva's chronic L5-S1 radiculopathy[10] had progressed.  Pet. Ex. 34 at 13.

In one of Ms. Karbusheva's most current medical records filed in this case, dated August 14, 2012, neurosurgeon Dr. Ronald E. Jutzy notes that Ms. Karbusheva had a "left L5 and/or S1 radiculopathy" but "no objective reflex loss or motor atrophy."  Pet. Ex 36 at 1.  Dr. Jutzy recommended conservative treatment.  Id.

## II.    Procedural Background

Ms. Karbusheva filed her case *pro se*, and the case was initially assigned to Special Master Laura Millman.  Special Master Millman provided a list of vaccine attorneys for Ms. Karbusheva to contact to assist in representing her.  See Order dated January 23, 2013.  The case was reassigned to the undersigned on February 11, 2013.  An initial status conference was held on April 4, 2013.  Ms. Karbusheva participated in the status conference with the assistance of her interpreter, Alexander Bazarsky.  Ms. Julia McInerny appeared on behalf of respondent.  Ms. Maria Keith, the court interpreter, also participated in the status conference with the consent of Ms. Karbusheva.  At that status conference, Ms. Karbusheva agreed to try to retain an attorney to represent her.  Prior to the status conference, Ms. Karbusheva had filed many of her medical records.  During the status conference, she also agreed to file additional information to support her claim.  See Order filed April 5, 2013.

On April 15, 2013, Ms. Karbusheva filed information regarding her physician visits and documents related to her application for Social Security Supplemental Income.  She included a list of 81 health care visits from February 2010 through March 2013.   Ms. Karbusheva also filed a VAERs report dated December 17, 2012, and a description of the adverse events which she believes to be related to her vaccinations, including a lengthy description of her health problems, and a list of her medications.  On May 3, 2013, Ms. Karbusheva filed duplicates of the records previously filed on April 15, 2013, as well as some immunization records.

On June 4, 2013, the undersigned held a second status conference.  Ms. Karbusheva appeared representing herself and Ms. Julia McInerny appeared on behalf respondent.  A court interpreter again participated with the consent of petitioner.  Ms. Karbusheva stated during the status conference that she had not yet obtained counsel to represent her.  The undersigned requested that Ms. Karbusheva file the records of the hospitalizations that she mentioned during the status conference, as well as any other records related to her alleged vaccine injury, and a copy of a lawsuit that she filed in state court against the physician who administered the vaccines to her, as discussed during the status conference.   Ms. Karbusheva was again encouraged to continue seeking to retain an attorney to represent her in this matter.  See Scheduling Order filed June 5, 2013.

---

[10] Radiculopathy is defined as a "disease of the nerve roots, such as from inflammation or impingement by a tumor or bony spur."  Dorland's Illustrated Medical Dictionary ("Dorland's"), 32nd Ed. at 1571.

On July 10, 2013, Ms. Karbusheva filed a set of documents labeled as "Petition to add Respondent's to Suit." This set of documents included a letter from the CEO of a hospital regarding Ms. Karbusheva's concerns about the treatment she received in the emergency department of that hospital in January and February 2013. The documents also included an email from the American Civil Liberties Union to Ms. Karbusheva, a copy of the civil docket for a lawsuit that Ms. Karbusheva filed in U.S. District Court for the District of Idaho on February 14, 2013, against a total of 31 defendants including various physicians, health centers, and representatives from various health care facilities. The action was dismissed for lack of jurisdiction on March 8, 2013.

Also included in the documents filed by Ms. Karbusheva on July 10, 2013, is what appears to be a request by Ms. Karbusheva for this court to provide her with a "neurologist and rheumatologist from another state." See "Petition to add Respondent's to Suit", ECF No. 12, July 10, 2013, PDF pg. 20 of 20.

By order dated July 17, 2013, Ms. Karbusheva was again encouraged to retain an attorney to represent her. See Scheduling Order, July 17, 2013. On August 22, 2013, the undersigned ordered that Ms. Karbusheva file any additional records in support of her claim as well as a notice of completion, indicating that all relevant records had been filed, by September 20, 2013. Respondent was ordered to file a response to petitioner's filings by October 23, 2013. In addition, respondent requested the opportunity to file a motion to dismiss and the Rule 4 report by October 23, 2013. This request was granted. See Respondent's Motion to Modify July 22, 2013 Scheduling Order, filed Aug. 21, 2013, ECF No. 16, at 2.

On September 10, 2013, petitioner filed exhibits 1-208 on CD. The exhibits included a number of documents previously filed, a document entitled "Petition", a discussion of petitioner's concerns regarding the care she received at a third-party facility, and what appears to be a request that this court join Ms. Karbusheva's claims against the State of Idaho to the petition that she has filed in this court.

A status conference was held on September 26, 2013. Ms. Karbusheva, respondent's counsel and a court interpreter participated. During the status conference, Ms. Karbusheva informed the undersigned that she had retained an attorney, Ms. Simina Vourlis, to represent her. Based on this development, all deadlines were suspended to allow Ms. Vourlis to make an appearance in the case. See Order filed September 26, 2013. On October 24, 2013, a consent motion to substitute Attorney Simina Vourlis in place of Ms. Karbusheva was filed and granted.

A status conference was held on December 19, 2013. Ms. Vourlis appeared on behalf of Ms. Karbusheva, and Ms. McInerney appeared on behalf of respondent. During the status conference, the parties generally discussed the vaccinations that Ms. Karbusheva received, the medical records and, more specifically, the vaccines which may have been administered to Ms. Karbusheva outside of the applicable statute of limitations period. The parties also discussed the fact that the H1N1 vaccination that Ms. Karbusheva received on February 1, 2010, is not covered by the National Vaccine Injury Compensation Program. Finally, the parties discussed the ambiguity that existed with respect to Ms. Karbusheva's alleged injuries and the fact that Ms. Karbusheva has filed various pleadings against entities that are not subject to this court's

jurisdiction.  As Ms. Vourlis had only recently entered her appearance, she requested additional time to review the petition and the numerous exhibits that had been filed.  Petitioner's counsel was asked to file a status report by February 24, 2014, updating the court on the status of her review of the records.  See Order filed December 20, 2013.

The next status conference was held on April 24, 2014.  Ms. Simina Vourlis appeared on behalf of Ms. Karbusheva.  Ms. Julia McInerny appeared on behalf of respondent.  By her request, Ms. Karbusheva also participated in the status conference with the assistance of a court translator.  During the status conference, Ms. Karbusheva expressed her desire to terminate her attorney-client relationship with Ms. Vourlis.  Although the undersigned inquired whether it was possible for Ms. Karbusheva and Ms. Vourlis to continue working together, after hearing Ms. Vourlis's concerns about proceeding and Ms. Karbusheva's consent to allow Ms. Vourlis to withdraw as her counsel, the undersigned granted Ms. Vourlis's motion to withdraw.  The undersigned explained to Ms. Karbusheva that at this point, in order to proceed with her case, she would need to file a report from a medical doctor in support of her claim.  Ms. Karbusheva inquired as to what type of medical doctor she needed to support her claim and how to locate and retain the expert.  The undersigned explained that she could not offer any legal advice to Ms. Karbusheva on how prosecute her claim and encouraged Ms. Karbusheva to seek the advice of another attorney.  Ms. Karbusheva was ordered to retain another attorney or to file an expert report in her case by June 23, 2014.  If she was unable to do so, Ms. Karbusheva was informed that a Show Cause Order would be issued.  See Order filed April 28, 2014.

On May 14, 2014, Ms. Karbusheva filed a letter type document with a number of attachments.  In these attached documents, Ms. Karbusheva stated that she would represent herself without an attorney or without medical experts.  See "Letter" filed May14, 2014, ECF No. 28, at 2.  She described her attempts to contact other attorneys to represent her and her ongoing health problem.  Ms. Karbusheva also filed emails and letters describing various issues and health problems.  Ms. Karbusheva did not, however, file any expert report, or any evidence to support her vaccine injury claim.

On June 19, 2014, after another request by Ms. Karbusheva, her deadline to file an expert report or retain an attorney was extended to August 15, 2014.

On July 7, 2014, Ms. Karbusheva filed a "Motion for added continue law case for period 2013-2014 that VICP doesn't work."  Ms. Karbusheva also filed documents, including a second order of dismissal of her lawsuit filed in the U.S. District Court for the District of Idaho and a petition requesting compensation from St. Luke's Health System, Family Medicine Health Center, and the State of Idaho, seeking twenty million dollars in damages.  She also filed a motion to use medical literature in her case and filed several articles on medical conditions.  Ms. Karbusheva did not, however, file an expert report.

On July 14, 2014, petitioner filed a "Motion to direct me to University Clinic to California State or Taxes[11] (sic) State for exam and diagnosed Lupus and Neurological Diagnose" along with a memorandum.  On July 18, 2014, petitioner filed a "Motion to add

---

[11] "Texas"

document Health Professionals Certification of Disability."  These filings did not contain an expert report.

From June 16, 2014, to September 16, 2014, Ms. Karbusheva sent numerous emails to the undersigned's law clerk and they have been noted on the CM/ECF docket as informal email communications.  On October 31, 2014, copies of the emails were filed as Court's Exhibits A through K.

The undersigned issued an Order to Show Cause on August 25, 2014, ordering Ms. Karbusheva to file an expert report in support of her claim, or her petition would be dismissed. Ms. Karbusheva sent additional emails to the undersigned's law clerk on July10, 2014, and July 18, 2014.  See Court Exhibits F and G.  On September 11, 2014, petitioner filed a "motion for a ruling on the record and PDF 01-208."  She also filed a "motion for add my expertise of my health that attached on 21 pages."  To date, Ms. Karbusheva has failed to file an expert report in support of her claim as ordered on August 25, 2014.

## III.     Requirement for an Expert Report or Supportive Medical Records

Petitioner bears the burden of proving a prima facie case by a preponderance of the evidence.  See 42 U.S.C. § 300aa-13(a)(1)(A); see also Moberly v. Sec'y of Health & Human Services, 592 F.3d 1315, 1320 (Fed. Cir. 2010).  To prove causation, petitioner must "show by preponderant evidence that the vaccination brought about [the] injury by providing: (1) a medical theory causally connecting the vaccination and injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury."  Moberly, 592 F.3d at 1322 (citing Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

The preponderance standard applies to each element of petitioner's proof.  For example, with regard to the medical theory, the theory must be "persuasive" – that is, specific to petitioner's case and supported by a "reputable", i.e., reliable, scientific or medical explanation. Moberly, 592 F.3d at 1322 (holding that "[a] petitioner must provide a reputable medical or scientific explanation that pertains specifically to petitioner's case"); Althen, 418 F.3d at 1278 (holding that "[a] persuasive medical theory is demonstrated by 'proof of a logical sequence of cause and effect showing that vaccination was the reason for the injury[,]' the logical sequence being supported by 'reputable medical or scientific explanation[,]' . . ."(citing Grant v. Sec'y of Health & Human Servs., 956 F.2d 1133, at 1148 (Fed. Cir. 1992).

A petitioner may not be awarded entitlement under the Vaccine Act based a petitioner's claims alone.  Rather, the petition must be supported by either medical records or by the opinion of a competent physician.  See 42 § 300aa-13(a)(1).  In this case, because the medical records do not support Ms. Karbusheva's claims, a medical opinion must be offered in support.

Ms. Karbusheva has not offered a supportive expert report in support of her claim. Further, none of Ms. Karbusheva's treating physicians attribute any of her conditions to her vaccinations.  There is also no preponderant evidence in the record of: (1) a medical theory causally connecting the vaccine and Ms. Karbusheva's injury; (2) a logical sequence of cause

and effect showing that the vaccine(s) was the reason for her injury; and (3) a showing of a proximate temporal relationship between the vaccine and his injury.  <u>Althen v. Sec'y of Health & Human Servs.</u>, 418 F.3d 1274, 1278 (Fed. Cir. 2005); 42 U.S.C. § 300aa–13(a)(1) (requiring proof by a preponderance of the evidence).

**IV.**    <u>**Conclusion**</u>

Therefore, Ms. Karbusheva's petition is hereby DENIED. Thus, this case is DISMISSED for insufficient proof.  In the absence of a motion for review, the Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

_____

Nora Beth Dorsey
Special Master

Notice of filing Court Exhibits A through F

| Courts Exhibits | Date of E-mail |
|---|---|
| A | June 16, 2014 |
| B | June 26, 2014 |
| C | June 29, 2014 |
| D | July 1, 2014 |
| E | July 1, 2014 |
| F | July 10, 2014 |
| G | July 18, 2014 |
| H | August 1, 2014 |
| I | August 5, 2014 |
| J | September 9, 2014 |
| K | September 16, 2014 |